# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

FERNANDO and ELMA GONZALES as
parents and next friends of FERNANDO
GONZALES, JR.,

        Plaintiff,

v.                                                No. CIV 01-837 BB/RLP-ACE

PAUL PASSINO, individually as a teacher,
ARLENE TRUJILLO, individually and as
principal of Questa Junior and Senior High
School, NELSON LOPEZ, individually and as
superintendent of Questa Independent School
District, the SCHOOL BOARD, and
QUESTA INDEPENDENT SCHOOL
DISTRICT,

        Defendants.

## **OPINION**

THIS MATTER comes before the Court for consideration of Defendants' motion for summary judgment (Doc. 45). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that the motion will be granted and this case dismissed.

Plaintiff Fernando Gonzales, Jr., was a student at a middle school in Questa, New Mexico, at the time of the incident leading to this lawsuit. Defendant Passino was a teacher at the school, and "hit" (the level of severity is hotly disputed) Plaintiff on the arm with a plastic bat used for playing whiffle ball. Plaintiffs filed this civil-rights lawsuit as a result. Defendants Trujillo and Lopez have been dismissed from the case by agreement of the parties (Doc. 55). The remaining Defendants have moved for summary judgment.

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." Id. On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will consider Defendants' motion for summary judgment in light of these standards.

**Facts:** Viewed in the light most favorable to Plaintiffs, the facts are as follows: (1) Fernando Jr. was in the school gym at the same time as Defendant Passino; (2) Fernando Jr. called a friend of his, who was standing or walking near Passino, a "faggot" (Fernando Jr. dep., p. 30, Exh. C, Def. Mem.); (3) Passino thought Fernando Jr. was talking to him rather than his friend, asked Fernando Jr. what he had said, and struck Fernando Jr. on the arm with the plastic bat (*Id.* p. 34; Passino dep., pp. 17-18, Exh. D, Def. Mem.); (4) Passino demanded that Fernando Jr. go to the office, but Fernando Jr. refused (Passino dep., pp. 18-19); (5) Passino, after demanding several times that Fernando Jr. go to the office, pushed him once, hard enough to make him stumble (Fernando Jr. dep. p. 42; Passino dep. p. 19); (6) Fernando Jr.'s elbow turned red immediately after it was struck (Fernando Jr. dep. p. 38); (7) the day after the incident, Fernando Jr. went to a clinic, and was

2

examined by a medical professional (Exh. G, Def. Mem.); (8) the medical professional found "Tenderness, faint bruising, min. swelling" on the arm (*Id.*); (9) x-rays were taken, which revealed no fracture or other serious injury (*Id.*); and (10) no evidence of serious injury, emotional distress, or severe pain has been presented.

**Applicable Law:** As the above facts indicate, this case can be categorized as one involving a teacher's gratuitous, unprovoked (or at least insufficiently provoked) application of force to a student. The parties dispute whether the constitutional standard applicable to this case is the standard provided by substantive-due-process cases under the Fourteenth Amendment, or excessive-force cases decided under the Fourth Amendment. The two standards are quite different and applying one rather than the other could very well lead to different results in this case. *See Gottlieb v. Laurel Highlands Sch.*, 272 F.3d 168, 171 (3d Cir. 2001) (case involving gratuitous shove of student by assistant principal; noting that difference between reasonableness standard of Fourth Amendment, and shocks-the-conscience standard of Fourteenth Amendment, could be determinative).

Claims of excessive force by police officers, allegedly in violation of the Fourth Amendment, are analyzed using an objective reasonableness standard. *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001), *citing Graham v. Connor*, 490 U.S. 386, 395 (1989). This standard requires inquiry into the factual circumstances of every case, with relevant factors including the crime's severity, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest. *Id.* Where there is no need at all for the application of force by the officer, it appears that no serious or permanent injury need have occurred to support a finding that the Fourth Amendment was violated. *See, e.g., Bastien v. Goddard*, 279 F.3d 10, 14-15 (1st Cir. 2002) (trial-worthy excessive force claim is not precluded merely because only minor injuries were inflicted by

3

the seizure; citing cases from other circuits to same effect); *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999) (temporary choking of suspect, motivated only by malice, but causing only temporary dizziness, loss of breath, and coughing, could still constitute excessive force under the Fourth Amendment); *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) (wholly gratuitous shove by officer, propelling suspect into patrol car, might constitute excessive force, so denial of qualified immunity affirmed); *cf. Burrows v. City of Tulsa*, 1994 WL 232169 (10th Cir.) (jury instruction in Fourth Amendment excessive-force case was erroneous because it required plaintiff to prove he had suffered a "significant injury").

On the other hand, in most circuits, including the Tenth, claims brought against a school for the alleged use of excessive force to discipline a school-child are not considered violations of the Fourth Amendment. Instead, they are analyzed as potential substantive-due-process violations under the Fourteenth Amendment. *See Gottlieb,* 272 F.3d at 172; *P.B. v. Koch*, 96 F.3d 1298, 1302 (9th Cir. 1996) (discussing cases from six other circuits); *Garcia v. Miera*, 817 F.2d 650, 653-54 (10th Cir. 1987). The level of egregiousness needed to establish a violation of substantive due process is much higher than will suffice to prove excessive force during a seizure. Punishment of a student by a teacher does not violate the Fourteenth Amendment unless the force applied "caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Garcia*, 817 F.2d at 654. Another formulation of the test is that a teacher's application of force to a student will be conscience-shocking if it was maliciously and sadistically employed in the absence of a discernible government interest, and is of a kind likely to produce substantial injury. *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246,

4

252 (2d Cir. 2001). It is clear, therefore, that the existence of a substantial injury, or at least the potential for causing such injury, is necessary in substantive-due-process cases, before a violation of the Fourteenth Amendment will be found.

Plaintiffs attempt to avoid application of the more stringent substantive-due-process test by arguing that the altercation between Fernando Jr. and Passino was not an instance of punishment. Instead, they claim Passino seized Fernando Jr., for constitutional purposes, when he hit Fernando Jr. on the arm with the plastic bat. Plaintiffs point out that Passino was "confronting Fernando Jr. for something he allegedly did wrong and was attempting to take him to the Principal's office. That is akin to an investigatory stop by police with a subsequent arrest." Plaintiffs accordingly argue that the law applicable to corporal-punishment cases arising out of disciplinary actions does not control in this case. Defendants, on the other hand, argue that the Fourth Amendment excessive-force analysis is only applicable to law enforcement officers, and should never be applied in a school setting.

This case involves a situation in which a teacher spontaneously used physical force against a student, with little or no provocation. The clear weight of authority is contrary to Plaintiffs' contention that the Fourth Amendment should apply in such a situation. *See Gottlieb*, 272 F.3d at 172 (momentary use of physical force by a teacher in reaction to a disruptive or unruly student is not a seizure of the student, and Fourth Amendment does not apply); *Johnson*, 239 F.3d at 251-52 (teacher lost his temper when student threw ball at him; physically attacked student; case analyzed under substantive due process principles as a "non-seizure, non-prisoner" instance of excessive force); *Koch*, 96 F.3d at 1303-04 (applying substantive due process principles to incidents in which principal spontaneously punched, choked, and slapped students; noting some uncertainty, in footnote, as to whether Fourth Amendment might apply instead); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d

5

716, 724-25 (6th Cir. 1996) (Fourteenth Amendment, not Fourth, applies to claims that teacher slapped one student and sexually harassed two others).[1]

The only circuit that has applied the Fourth Amendment, rather than the Fourteenth, in a similar context appears to be the Seventh Circuit. *See Wallace v. Batavia Sch. Dist.*, 68 F.3d 1010, 1012-14 (7th Cir. 1995) (Fourth Amendment applies where teacher grabbed student's elbow and wrist to force her to leave classroom). However, *Wallace* is not controlling or persuasive because, in contrast to Tenth Circuit law, the case states that corporal punishment in schools should be evaluated under the Fourth Amendment rather than the Fourteenth. 68 F.3d at 1016; *compare Garcia*, *supra*. This Court, of course, is bound by Tenth Circuit precedent. *United States v. Spedalieri*, 910 F.2d 707, 709 (10th Cir. 1990).

The Court is also not persuaded by Plaintiffs' attempt to characterize this case as one not involving corporal punishment. The only difference between this case and one in which a student is paddled or otherwise struck in the principal's office, as in *Garcia*, is that the application of force in this case was spontaneous and immediate, rather than postponed. The undisputed evidence is that Passino struck Fernando Jr. with the plastic bat either because he was angry at being called a "faggot" or because Fernando Jr. was ignoring him and walking away.[2] By hitting Fernando Jr. with the bat,

---

[1]On the other hand, contrary to Defendants' sweeping law-enforcement-officers-only argument, the Fourth Amendment has been applied in a school context where an actual confinement of the student occurred, for purposes of investigating a violation of law or school rules. *See, e.g., Edwards v. Rees*, 883 F.2d 882, 883-84 (10th Cir. 1989) (assuming student was seized for Fourth Amendment purposes when he was taken to a school office to be questioned about a bomb threat the school had received, and applying reasonableness standard to find no violation of the Constitution).

[2]Passino never admitted to being angry about the name-calling, but this is easily implied from the fact that he asked Fernando Jr. "What did you say?" or "What did you call me?" and then hit Fernando Jr. with the plastic bat.

6

Passino was punishing him just as much as if he had taken him to the principal's office and then hit him. In other words, the fact that punishment occurs instantaneously rather than after a period of time does not mean it is not punishment. Plaintiffs' distinction would lead to confusing and inconsistent results, in which immediate applications of force upon a student would be treated differently, for constitutional purposes, than slightly delayed applications of force. There is no principled reason to treat the two situations differently.³ Given the Tenth Circuit's treatment of corporal punishment in the schools as a substantive due process matter, and the clear weight of authority from other circuits applying the same law to immediate applications of force by a teacher or principal, the Court finds the law applicable to this case is that provided by the Fourteenth Amendment rather than the Fourth.

**Application of Law to the Facts of this Case:** The standard to be applied under the Fourteenth Amendment is uniform from circuit to circuit. As stated above, a student's right to substantive due process is violated only by state conduct that can properly be characterized as arbitrary or conscience-shocking in a constitutional sense. *Gottlieb*, 272 F.3d at 172. This Court must look at factors such as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted or the reasonably foreseeable risk of serious bodily injury, and whether the force was applied in a good faith effort to maintain or restore

---

³The Court also notes that Plaintiffs' attempt to characterize Passino's blow as a constitutional seizure does not comport with the Tenth Circuit's law as to what constitutes a seizure. According to the Tenth Circuit, a seizure occurs only if the subject of the initial action is actually stopped as a result. *See Bella v. Chamberlain*, 24 F.3d 1251, 1255-56 (10th Cir.1994). In this case, Fernando Jr. did not submit as a result of the blow to his arm; he became angry, swore at Passino, and refused to go to the principal's office. (Fernando Jr. dep. pp. 34-34, 41) Even treating Passino as a law enforcement officer, therefore, and applying traditional Fourth Amendment seizure law, the Court could not find that Passino seized Fernando Jr. by hitting him with the plastic bat.

7

discipline or maliciously and sadistically for the purpose of causing harm. *Id.,* at 272-73. Again as noted above, the existence of serious injury or the potential for causing such injury is a major factor in substantive due process cases.

In this case, accepting Plaintiffs' version of the events as true, there was little or no need for Passino's application of force, and Plaintiffs have therefore satisfied the first two factors in the above list. In addition, the Court has pointed out that it is possible to infer that Passino did not hit Fernando Jr. on the arm in a good faith effort to restore discipline, but simply because he was angry about being called a "faggot," and therefore the fourth factor has been met as well. Plaintiff's case founders, however, on the third factor, the extent of injury or potential for such injury. One hit with a plastic bat on the arm, even a hard smack, simply does not have the potential to cause serious harm to an eighth-grade student, and did not cause such harm in this case. *See Lillard*, 76 F.3d at 726 ("it is simply inconceivable that a single slap could shock the conscience" even though there was no legitimate disciplinary purpose occasioning the slap). The day after the incident the medical exam revealed only "faint bruising" and tenderness on Fernando Jr.'s arm. If this case had involved repeated blows with the bat, or if Fernando Jr. had been hit in the face or another part of the body where serious injury might occur as a result of such a blow, the result might be different. In addition, it should be noted that there is no evidence the bat used in this case had been weighted or reinforced with tape, which would have made serious injury much more likely. *See, e.g., Emerick v. Indian Valley Local Bd. of Educ.*, 2000 WL 874737 (Ct. App. Ohio) (whiffle bat was weighted on barrel and handle with tape, to allow students to hit the ball farther; bat slipped out of batter's hand, broke student's jaw). The Court simply cannot find that hitting Fernando Jr. once on the arm with a plastic bat, even hard, amounted to a "brutal and inhumane abuse of official power" literally shocking the

8

conscience, the standard established by the Tenth Circuit for school-related corporal punishment cases. *See Garcia*, 817 F.2d at 655-56.[4]

By holding that Plaintiffs have not stated a federal constitutional violation, the Court does not mean to condone in the slightest a teacher's gratuitous imposition of pain on a student, no matter how temporary the pain might be. The Court merely holds that Passino's actions in this case, even accepting all of Plaintiffs' facts as true, did not pose the type of harm or danger of harm that would merit bringing the matter before a federal court under Tenth Circuit precedent.

**Conclusion:** Based on the foregoing, the Court will grant Defendants' motion for summary judgment (Doc. 45), and this case will be dismissed.

---

[4]The Court recognizes that one result of applying the Fourteenth Amendment, rather than the Fourth, to school punishment cases, is that suspects being arrested or incarcerated individuals have a lower burden to meet in establishing an injury sufficient to trigger constitutional protections. For discussion critical of this disparity, *see* Jerry R. Parkinson, *Federal Court Treatment of Corporal Punishment in Public Schools: Jurisprudence That Is Literally Shocking to the Conscience*, 39 S.D.L.R. 276, 307 (1994). It is apparent from a review of the cases that if a prison guard or a police officer gratuitously struck a prisoner or suspect with a plastic bat, hard enough to cause even a faint bruise, that injury would probably be enough to provide the basis for a § 1983 lawsuit. *See* Fourth Amendment cases cited above; *DeSpain v. Uphoff,* 264 F.3d 965, 978 (10th Cir. 2001) (temporarily burning eyes and lung congestion, due to prison guard's gratuitous spraying of pepper spray in cell block, stated sufficient injury for Eighth Amendment excessive-force claim; no need for plaintiff to allege significant and lasting injuries). One possible explanation for this different treatment is the fact that police officers or prison guards operate in a much more restrictive environment, and wield much more of the state's power, than do teachers. *See Flakes v. Percy*, 511 F.Supp. 1325, 1333 (W.D. Wis. 1981) (making this distinction in banning corporal punishment at psychiatric hospital). Teachers occupy *in loco parentis* status in a school, in an environment that is often informal and conducive to challenges to the teacher's authority. *See Ingraham v. Wright*, 430 U.S. 651, 670, 682 (1977). Unlike officers or prison guards, teachers are not authorized to use deadly force and rarely, if ever, are confronted with a situation in which such force might be necessary. Finally, teachers are constantly surrounded by and interacting with a large number of students, and frequently face the necessity of dealing with disobedient or disruptive students. All of these factors mean that it is not as desirable to strictly control the teachers' interactions with their students, through the mechanism of a civil rights lawsuit. Instead, teachers, like parents, are given more constitutional leeway than police officers or prison guards to deal with the citizens with whom they interact.

Dated this 28th day of August, 2002.

_____
BRUCE D. BLACK
United States District Judge

**ATTORNEYS**:

**For Plaintiffs**:
Samuel M. Herrera

**For Defendants**:
Lisa M. Roybal